167 So. 191

WHEELER v. WHEELER.

No. 33741.

March 2, 1936.

Rehearing Denied March 30, 1936.

Dickson & Denny, of Shreveport, for relatrix.

Jack & Jack, of Shreveport, for respondent George A. Wheeler.

HIGGINS, Justice.

Relator, who brought a rule, in a separation from bed and board proceedings against her husband, to show cause why the custody of their two minor children should not be granted to her, and why he should not be condemned to pay $25 per month alimony, filed an application for a writ of certiorari, to review the judgment of the district court sustaining exceptions, ratione personae and ratione materiae, to the jurisdiction of the court, and for a writ of mandamus to compel the trial judge to hear the matter on its merits. We issued a rule nisi, and respondents in their joint return averred that relator had an adequate remedy by appeal and, in the alternative, that the ruling complained of was correct.

The husband sued his wife for a separation from bed and board on the grounds of cruel treatment, and for the custody of their minor daughter, Kitty Ree, alleging that the baby, Betty Jean, who was six months old, should be left with its mother, because of its tender age. On June 1, 1935, judgment was rendered, granting him the separation and the custody of the child, Kitty Ree, but nothing was stated with reference to the baby. After placing Kitty Ree with his mother, the husband, about a week later, permanently moved out of the state of Louisiana, and established his domicile at Attica, Kan.

On October 23, 1935, the husband stopped over night in Shreveport, La., his former home, while en route to Texas, and was personally served with a rule filed by the wife, asking for the custody of both children and for alimony. The rule was set for hearing on October 30, 1935, and the exceptions to the jurisdiction of the court were filed. The trial judge originally overruled the exceptions, but, on rehearing, sustained them, and the relator petitioned this court to exercise its supervisory jurisdiction.

The law is clear that, in cases where the remedy by appeal is inadequate, this court may, in its discretion, exercise its supervisory powers, in order to prevent a denial of justice. Code Prac. arts. 829, 830, 831, and 857; sections 2 and 10, article 7, of the Constitution of Louisiana of 1921; Dill v. Lowery, 166 La. 645, 117 So. 748; State ex rel. Rossner v. Berthelot, 131 La. 367, 59 So. 773; T. Hofman-Olsen, Inc., v. Northern Lumber Mfg. Co., 160 La. 839, 107 So. 593; Wachsen v. Commission Council of Lake Charles et al., 162 La. 823, 111 So. 177.

In the instant case, it is said that the relator has an adequate remedy by appeal, because she does not allege that the respondent is threatening to take the children out of the jurisdiction of the court. Relator does allege "that she has no adequate remedy by appeal, as her children may be taken from her and from the jurisdiction of this court. * * *"

There is no doubt that, since the father was granted the custody of his daughter Kitty Ree, he might, at any time he chose, take the child to Kansas with him, and thereby render nil relator's rule for the

custody of the little girl, if it is determined that the court has jurisdiction. As the court below sustained the exceptions, a suspensive appeal from that judgment would be ineffective to hold the matter status quo, because the father has already been granted the custody of the child and, therefore, a suspensive appeal in a matter of this kind, for all practical purposes, is equivalent to a devolutive appeal. As the father, by taking the children outside of the state at any time he might elect to do so, pending the appeal, could thereby change the situation in his favor, it is obvious that an appeal under those circumstances is not an adequate remedy. In short, where it is left in the discretion of one of the litigants to decide whether or not the appeal will be adequate and where he is at liberty to pursue a certain course of conduct, which might result in a great injustice to the other litigant, before his rights are determined, it is clear that the remedy by appeal is inadequate and presents a case where this court should exercise its supervisory jurisdiction. Pullen v. Pullen, 161 La. 721, 109 So. 400.

With reference to the exceptions to the jurisdiction of the court, it must be borne in mind that this is a separation from bed and board proceeding, over which the district court is conceded to have had jurisdiction, when the case was instituted originally. It is undisputed that the children at all times remained in Shreveport, or within the jurisdiction of the court. The sole question is whether or not the father, having established his domicile in Kansas, divested the court of jurisdiction over him in a separation from bed and board proceeding, after obtaining a judgment of separation from bed and board against his wife, and the custody of the child.

In the case of Pullen v. Pullen, supra, this court held that where the defendant moved out of the parish, after a judgment of divorce had been granted in his favor and awarding him the custody of his children, who remained within the jurisdiction of the court, that the district judge still had jurisdiction to determine the question of the custody of the children, because a judgment awarding the custody of children is revocable.

In the case of Lukianoff v. Lukianoff, 166 La. 219, 116 So. 890, after personal citation had been served on the defendant, the plaintiff secured a judgment of separation from bed and board in the parish of Caddo, La., and thereafter both parties became residents of New York. After more than a year had elapsed, she sued her husband for a final divorce, and he was served with citation through a curator ad hoc, under the provisions of Act No. 296 of 1910. No question of alimony or custody of children was involved. The curator ad hoc filed an exception to the jurisdiction of the court, which was sustained by the district judge. In reversing the decision of the lower court, 166 La. 219, at page 223, 116 So. 890, 891, we said:

"The later acts, Act No. 25 of 1898 and Act No. 296 of 1910, eliminate any discussion or doubt as to the question of the jurisdiction of the court, rendering the decree of separation, to grant a judgment of

absolute divorce based upon such decree, and as to the right of a *plaintiff to resort to constructive service where the defendant is an absentee.*

"It is well established as a general rule that, where the jurisdiction of the person or of the res has once attached, it is not defeated by a removal of the person or the res beyond the jurisdiction of the court. 15 C.J. 824; 7 R.C.L. 1045; United States v. Dawson, 15. How. 467, 14 L.Ed. 775; Lofton v. Collins, 117 Ga. 434, 43 S.E. 708, 61 L.R.A. 150; McSherry v. McSherry, 113 Md. 395, 77 A. 653, 140 Am.St.Rep. 428.

"We are of the opinion that the district court of Caddo parish was vested with jurisdiction to grant plaintiff a divorce a vinculo matrimonii." (Italics ours.)

If the court retained jurisdiction of the separation from bed and board and divorce proceedings against an absentee, who was served by substituted process, it is clear that, if the defendant had been served personally, within the jurisdiction of the court, the court would have jurisdiction over him. In other words, the court retained jurisdiction of the res, i. e., the marital status of the parties litigant and all demands incidental thereto.

In the·instant case, the rule was served upon respondent, in person, in an incomplete proceeding over which the trial court originally had jurisdiction. The district court continued to have jurisdiction of the separation from bed and board suit. Having acquired jurisdiction of the matter, the court retained it over both parties in all

matters incidental thereto. The question of alimony and the custody of the children are incidental demands growing out of the separation from bed and board suit. The judgment with reference to the custody of the child was not irrevocable. The demand for alimony pendente lite is also incidental. The wife remained within the jurisdiction of the court, the child remained in the parish of Caddo, the defendant was personally served there, and the proceedings were pending there. We conclude that our learned brother below erred and that the exceptions should have been overruled.

We have been referred to the case of Person v. Person, 172 La. 740, 135 So. 225. In that case, after this court determined, as a matter of fact, from the evidence, that the father was domiciled in the state of Louisiana, and therefore the court had jurisdiction over him, it made certain observations with reference to the law that were purely obiter dicta. The expressions therein contained, if in conflict with the opinions of this court in Pullen v. Pullen and Lukianoff v. Lukianoff, supra, cannot stand.

For the reasons assigned, the rule nisi is made absolute, the writs are perpetuated, the judgment of the lower court is set aside, the exceptions are overruled, and the case is remanded to the district court for further proceedings, according to law and consistent with the views herein expressed; respondent to pay the costs of this court, all other costs to await the final outcome of the proceeding.

BRUNOT, Justice (dissenting).

George A. Wheeler was married to Catherine Elizabeth Sledge Wheeler in the city of Shreveport, parish of Caddo, state of Louisiana, on September 3, 1929. They continued to reside in Shreveport, and of their marriage two daughters were born: Kitty Ree Wheeler and Betty Jean Wheeler.

On May 17, 1935, Wheeler filed suit against his wife in the First judicial district court for the parish of Caddo for separation from bed and board on the ground of cruelty. At the time the suit was instituted Kitty Ree Wheeler was three and a half years old and Betty Jean Wheeler six months old. In his petition Wheeler asked for the custody of his daughter Kitty Ree, but alleged that he did not ask for the custody of his daughter Betty Jean because she was only six months old. Mrs. Wheeler did not answer his petition, and on June 1, 1935, a judgment by default was rendered and signed by the First judicial district court in favor of Wheeler granting him a separation from bed and board from his wife and granting him the custody, care, and control of Kitty Ree Wheeler. Nothing was said in the judgment about Betty Jean Wheeler.

About the time the judgment was rendered, Wheeler went to live permanently in Attica, Kan., and is now living there. He did not take Kitty Ree Wheeler with him, however, but left her in Shreveport, apparently with relatives. I presume that Betty Jean Wheeler has remained in the custody of her mother.

On October 3, 1935, Mrs. Wheeler filed a motion in the separation suit praying that a rule issue commanding her husband to show cause why she should not have the custody of her two minor daughters and why he should not be ordered to pay her alimony for their maintenance and her own. The rule issued as prayed for. Wheeler happened to be in Shreveport on his way back to Kansas from a trip to Texas, and the rule was served on him personally.

Wheeler filed a number of exceptions, among which was one to the jurisdiction of the court, which is the only one requiring consideration, as it is only of the trial court's action on this exception that relator complains. The matter was alloted to the Honorable T. F. Bell, one of the judges of the district court. The exception to the jurisdiction was tried, argued, and submitted to the court, and, on November 23, 1935, it was overruled. Wheeler filed a motion for a rehearing, and, after argument on that motion, a rehearing was granted to him. The exception to the jurisdiction was again submitted to the court, and, on November 26, 1935, the district court, acting through Judge Bell, sustained that exception. No judgment sustaining it appears to have been signed, however.

Counsel for Mrs. Wheeler immediately gave notice of intention to apply to this court for writs of certiorari, prohibition, and mandamus. She then filed her petition in this court, praying for a writ of mandamus ordering Judge Bell to reinstate the rule on the docket of the district court and try it on the merits, and, in the alterna-

tive, she prayed for a writ of certiorari to review the action of the trial court. On her petition this court ordered a writ of certiorari to issue commanding Judge Bell to send up the record in the case and commanding him and Wheeler to show cause why the relief prayed for by Mrs. Wheeler should not be granted. Judge Bell filed a return, in which he sets forth that copies of all of the proceedings in the cause are annexed to Mrs. Wheeler's petition for writs with the exception of one document, which he annexes to his return, and, therefore, that it is unnecessary to send the original record or a certified copy thereof to this court. In his return Judge Bell alleges that the relief prayed for by Mrs. Wheeler should not be granted because she has an adequate remedy by appeal.

With regard to the writ of mandamus, the Code of Practice provides:

"829. This is an order issued in the name of the State by a tribunal of competent jurisdiction, and addressed to a * * * court of inferior jurisdiction, directing it to perform some certain act belonging to the place, duty or quality with which it is clothed."

"830. The object of this order is to prevent a denial of justice, or the consequence of defective police, and it should therefore be issued in all cases where the law has assigned no relief by the ordinary means, and where justice and reason require that some mode should exist of redressing a wrong, or an abuse of any nature whatever."

"831. This order may be issued at the discretion of the judge, even when a party has other means of relief, if the slowness of ordinary legal forms is likely to produce such a delay that the public good and the administration of justice will suffer from it."

And of the writ of certiorari it says:

"857. This mandate is only granted in cases where the suit is to be decided in the last resort, and where there lies no appeal, by means of which proceedings absolutely void might be set aside."

Since the Constitution of 1879, all of our Constitutions have had in them provisions similar to those of our present Constitution relating to the supervisory jurisdiction of this court. Const.1879, art. 90; Const.1898, art. 94; Const.1913, art. 94.

Those of our present Constitution of 1921 are contained in sections 2 and 10 of article 7, and read as follows:

"§ 2. The Supreme Court, the Court of Appeal, and each of the judges thereof, subject to review by the court of which he is a member, * * * may also in aid of their respective jurisdictions, original, appellate, or supervisory, issue writs of mandamus, certiorari, prohibition, quo warranto, and all other needful writs, orders and process."

"§ 10. The Supreme Court shall have control of, and general supervision over all inferior courts."

According to the above-quoted articles of the Code of Practice, mandamus does not lie when the party seeking relief by means

of it has another remedy unless that remedy is inadequate, and such is the jurisprudence under the constitutional provisions above referred to. Dill v. Lowery, 166 La. 645, 117 So. 748.

Article 857 of the Code of Practice provides that certiorari may be resorted to only when there is no right of appeal. However, the constitutional provisions and the jurisprudence have broadened the application of the writ to include not only those cases in which there is no appeal, but also those in which an appeal is not an adequate remedy. State ex rel. Rossner v. Berthelot, 131 La. 367, 59 So. 773; Pullen v. Pullen, 161 La. 721, 109 So. 400; T. Hofman-Olsen, Inc., v. Northern Lumber Mfg. Co., 160 La. 839, 107 So. 593; Wachsen v. Commission Council of Lake Charles, 162 La. 823, 111 So. 177.

But that is as far as we have ever gone. Certiorari cannot be substituted for appeal. We will not review a decision of an inferior court by means of certiorari when the party applying for it has a remedy by appeal unless that remedy is inadequate and he would suffer some peculiar injustice by being relegated to it. Stewart v. Barrow, 6 Mart.(N.S.) 381; State ex rel. Weber v. Skinner, 32 La.Ann. 1092; State ex rel. Williams v. Klock, 45 La.Ann. 316, 12 So. 307; State ex rel. Keplinger v. Perez, 48 La.Ann. 1348, 20 So. 164; State ex rel. Rudy v. Tomkies, 49 La.Ann. 1162, 22 So. 336; State ex rel. Dunn v. Richardson, 49 La.Ann. 1612, 22 So. 960; State ex rel. Rozier v. King, 50 La.Ann. 19, 22 So. 928; Airey v. Pullman Palace Car Co., 50 La.Ann. 648, 23 So. 512; State ex

rel. Jaubert Bros. v. Leche, 113 La, 1, 36 So. 868; Landry v. Bellanger, 119 La. 466, 44 So. 266; Triche v. Labiche, 120 La. 820, 45 So. 738; First Nat. Bank v. Richardson, 123 La. 723, 49 So. 485; Denegre v. W. G. Tebault Furniture & Realty Co., 130 La. 283, 57 So. 929; State ex rel. Rossner v. Berthelot, 131 La. 367, 59 So. 773; Bloomfield v. Thompson, 134 La. 923, 64 So. 853; Saucier v. Saucier, 135 La. 973, 66 So. 317; Roseman v. Fetzler, 155 La. 373, 99 So. 295; Roussel v. Dalche, 159 La. 463, 105 So. 510; State v. Cotton, 162 La. 295, 110 So. 480; State v. Rabalais, 173 La. 927, 139 So. 8.

Clearly then, the district court's action in this case should not be reviewed by means of a writ of certiorari or mandamus if it may be reviewed by appeal, and if an appeal will afford Mrs. Wheeler an adequate remedy.

Section 10 of article 7 of the Constitution of 1921 confers on this court appellate jurisdiction of all suits for divorce or separation from bed and board, and of all matters arising therein, of suits involving alimony, and of suits for the custody of children. She then has a right to have the action of the trial court complained of by her reviewed upon appeal, if that be an adequate remedy.

She sought by her proceedings in the district court to obtain a judgment awarding her the custody of her two minor daughters, Kitty Ree Wheeler and Betty Jean Wheeler, and ordering her husband to pay her alimony for their support and her own. The ruling of the district court will prevent her from obtaining the relief sought

unless it is reversed. If she was entitled to that relief in the proceeding she instituted, she may obtain a reversal of the trial court's ruling by means of an appeal, which is all that she could obtain by this proceeding. Therefore, the appeal is an adequate remedy unless there is some reason why she would suffer some unjust injury during the delay incident to the appeal.

I do not believe that the supervisory jurisdiction of this court should be exercised in order to relieve a litigant from the mere delay incident to waiting on appeal. Probability of some greater injury must be shown, else the supervisory jurisdiction would supersede the appellate jurisdiction in all cases.

With regard to the alimony, I do not see how she could suffer any serious injury by having its payment deferred, if she is entitled to it, until the matter can be passed upon by appeal.

The custody of Kitty Ree was awarded to Wheeler on June 1, 1935. Mrs. Wheeler made no defense to the suit in which the judgment awarding her custody to her father was rendered. He has possession of her and is keeping her in Shreveport with his relatives. There is no suggestion that he intends to remove her from Shreveport. Mrs. Wheeler is seeking by the proceedings instituted by her to take the custody of this child away from the one who has it by virtue of a judgment and give it to herself. If she is actually entitled to it and has a right to obtain it in the proceedings she instituted, she can do so by the ordinary means, and the only effect of relegating her to an appeal to review the ruling of the trial judge will be to delay her. She will be in no worse position during that delay than she was before she commenced her proceedings. She will merely have to wait a while longer for what she wants.

Her counsel cite Pullen v. Pullen, 161 La. 721, 109 So. 400, supra. That case, however, was very different. In it the applicant for relief was not merely subjected to the inconvenience of having to wait for what she wanted. She was in danger of being deprived of what she had pending the proceedings if the supervisory powers of this court were not exercised. In that case Mrs. Pullen obtained a judgment of divorce from her husband in the district court for the parish of De Soto. In the judgment the custody of three of the minor children, issue of her marriage, was awarded to her husband. Shortly after rendition of the judgment he moved to New Orleans. He made no attempt for two years to obtain possession of the children whose custody had been awarded to him, and they remained with their mother in De Soto. She then brought a proceeding in the divorce case to modify the judgment in so far as it had awarded the custody of those children to him, alleging that after two years of inaction and neglect he was threatening to take them away from her and move them to New Orleans. Pullen filed an exception to the jurisdiction of the district court for De Soto parish, which that court sustained. Mrs. Pullen applied to this court for certiorari and mandamus, which were granted, and this court revers-

ed the ruling of the trial court and ordered it to reinstate the case on its docket for further proceedings. At the time that Mrs. Pullen instituted her proceedings to modify the judgment, she had in fact the custody of the children and had had it for two years. She was threatened with being deprived of their custody, · and probably would have been deprived of it pending an appeal if this court had not exercised its supervisory jurisdiction. In the instant case Mrs. Wheeler is not threatened with being deprived of Kitty Ree's custody.

This case would more clearly resemble the Pullen Case if Wheeler were attempting to take possession of Betty Jean. But Mrs. Wheeler does not allege that Wheeler is seeking the custody of Betty Jean, and who, in his answer to the rule, states that he does not want Betty Jean. Mrs. Wheeler has custody of that child and is in no danger of losing it. Therefore, she cannot possibly suffer any damages by being relegated to appeal in so far as the custody of Betty Jean is concerned.

My conclusion is that Mrs. Wheeler has an adequate remedy by appeal, and, I therefore, dissent from the opinion handed down in this case.